## Case No. 4,411.

ELLSWORTH v. The WILD HUNTER.

[2 Woods, 315.] [1]

Circuit Court, E. D. Texas.    May Term, 1876.

T. N. Waul, for libellant,

Thomas M. Jack, for claimant,

BRADLEY, Circuit Justice. The bark Wild Hunter, Captain Errickson, arrived in the harbor of Galveston on the 24th of Octo-

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

ber, 1871, having on board, amongst other things, over five hundred boxes of tin plate, consigned to the libellant, Thomas H. Ellsworth. The latter was anxious to get the tin, and his warehouse clerk, Daly, says that he carried a note from Ellsworth to the captain of the bark, on the morning of the 25th, asking for the tin, and that the mate and inspector of customs told him he could have it about twelve o'clock, or after dinner. Webster, the agent of the ship, says that Ellsworth called on him that morning to use his influence with the captain to get the tin discharged as soon as possible, to have it discharged at once. Webster directed the captain to get stevedores and commence discharging at one o'clock, and to stop at four. He gave notice to Ellsworth, who replied, "Daly will attend to it and have it all hauled up." About three p. m., only two or three drays were hauling. Webster told Daly he would have to put on more drays if he expected to get it up that night. He put on two more drays. Webster says that the orders from Ellsworth to his firm were never to store his goods; that he would remove them from the wharf if it took till nine o'clock p. m. to do so. Such orders had always been carried out by the firm and its employés. He says it was perfectly practicable for Ellsworth to have had all the freight which was landed carried to his warehouse that evening. The note taken by Daly to the captain in the morning, was as follows: "Now that your vessel is up to the wharf, we must ask you to do your best to give us some tin and tin plate; in fact we must get them to-day, cost what it will. We hope you will be able to give us them at once." Captain Errickson says it was in pursuance of this note that he engaged to discharge the cargo. Up to four o'clock he had discharged 550 cases of tin, all in good order and condition. The captain says that Ellsworth began to haul the tin between two and three, and at four o'clock p. m., he went to Ellsworth's office, and told him he would be unable to get the tin off the wharf unless he put more drays on to haul it. He put on three more, and at half past five two more; but 249 cases of tin remained on the wharf. At half past five, or fifteen minutes before six, the drays ceased hauling. The custom house officer and Captain Errickson staid till seven, but no more drays came, and a night watchman was put on to watch the tin. At ten, the weather becoming stormy, the captain says he took the mate and carpenter and piled up the cases and covered all with two tarpaulins, of good quality, and waterproof. Next morning, the weather being clear, he began discharging the remainder, and between seven and eight the draymen began to haul away the tin. Between eight and nine libellant came to the ship. He said he was sorry any was left there over night; that he had left orders with his clerk to haul off all the tin the night before; that he did not think any of the tin had been

damaged. The mate and carpenter entirely corroborate the testimony of the captain.

I think it is clear from the evidence in this case, that there was a delivery of the tin. It was delivered at the owner's urgent request; he wanted it. If he had employed a sufficient number of draymen, he could easily have had it all carried to his store. Even after the draymen stopped work, it could have been done by working on into the evening. Ellsworth had given orders to have it all brought up; he supposed it had been. The difficulty was that his clerk did not employ enough drays. To this hypothesis, it is objected that the captain attempted to take care of the tin by setting a watchman over it, and by piling it up on the wharf and covering it with tarpaulins. From this it is assumed that he knew the tin was at his risk. I do not think so. Seeing the rain coming on, he, as a matter of common prudence, did what any man would do under the circumstances. Delivered or not delivered, he did not want to see the tin spoiled. Besides, he knew that questions might be raised and that an ounce of prevention of litigation, as of anything else, is worth a pound of cure. Then it is said that he had it hauled up to the store in the morning. This does not seem to be so. The draymen, anxious to finish the job they had begun, were there betimes in the morning, taking away the tin. The captain would naturally suppose that they were complying with orders received from Ellsworth. It is said that the custom-house inspector refused to attend. On the contrary, he remained on the wharf till seven o'clock, waiting for the drays to come and take the tin. Under the circumstances, and as Ellsworth had told the ship's agent not to store his. freight (which is not contradicted), I think the goods were properly deliverable on the wharf, and that they were so delivered and were at the risk of the libellant.

I have not overlooked the testimony of the libellant himself, and of his warehouse clerk, Daly. The former admits that the captain promised him in the morning to discharge his freight that day; but he adds that he told the captain that he did not require the whole of the freight, but to give him some of it, adding that he supplemented this by two notes asking the captain to give him some of the tin-plate and block tin. Now we have seen the principal note. It says, "some tin and tin plate," it is true; but it adds, "In fact we must get them to-day, cost what it will. We hope you will be able to give us them at once." Ellsworth says the draymen informed him that no more goods would be delivered that night; but the inspector whom he met told him that some of them were on the wharf. He asked if they were protected, and was told that they were covered with tarpaulins. This must have been late in the evening. The libellant, however, seems to have been satisfied. This is the substance of Ellsworth's testimony, so far as it bears on the question. Taking this evidence all together, it does not materially contradict that of the other witnesses. I have already adverted to Daly's evidence. It does not materially alter the case. I think the tin was delivered, and that the libel must be dismissed.